A re-argument having been awarded on application of counsel,
Judge Trotter
delivered the following opinion:
We have not been able to find any reason for changing the opinion which was given in this cause at the last term. The case was then considered in reference to the liability of the sheriff., to the summary proceeding by motion for failing to obey the order of the court, or to execute or return its process, or any abuse of the administration of justice, in discharging his functions. The power to convict and punish in such cases, in a summary way, was considered to be inherent in the court, and as essential to the maintenance of its just authority, and the due administration of the public justice of the country. This right was shown to be as ancient as the common law itself. As an officer of the court, the sheriff was always liable to punishment in this way: the constitution in guaranteeing to the citizens of this state the right of trial by jury, did not intend to disturb the ancient and well established jurisdiction of the several courts of the country, nor to change entirely the modes of trial as they are regulated by the common ■ law. For if that interpretation were given to it, no order of the probate, court could be sustained, and the decrees of the court of chancery would be mere waste paper. It was" designed simply to guard, the people against the arbitrary or capricious interference of the government; and was conceived and *455 adopted in the spirit of the great charter of English liberty, which provides that no man shall be deprived of his life, liberty or property, except by the judgment of his peers, or the law of the land. Under this charter, the people of England have long flourished in the enjoyment of a boasted freedom, from any responsibility, but to the declared and established laws of the land. To the rule of conduct which these laws prescribe they submit themselves and their property, and are bound by their judgments in whatever mode they may be pronounced; and it is not regarded as any infringement of their rights thus solemnly pledged, that in the arrangement and distribution of the powers of the several courts which have grown up under the common law in that country, modes of trial in many cases are allowed which dispense with the verdict of a jury. For whether the court pronounces the judgment of the law upon facts found by the jury in cases where a trial by jury is required, or upon facts ascertained in other modes when they are permitted, the judgment is still the award of the law; and the inconvenience to which it may subject the party, is the result of the judgment of his peers in the one case, and of the law of the land in the other. It was in this sense that the constitution of the United States has provided that no person shall be deprived of life, liberty or property, without due process of law. And in the construction of this provision of the federal charter, as well as that of the bill of rights securing the right of jury trial, the courts have uniformly held that in the first case the words, due process of law, are to he understood as referring to the course and usage of the common law, as it stood at the time of the adoption of the charter, and in the second case, to questions which were triable by jury at common law. This being the case, proceedings of the kind used in the case at bar, have ever been held not to be at variance with the right secured in the constitution.
But whilst this is admitted to be true in a proceeding against the sheriff alone, yet it is denied where the sureties of that officer are sought to be made liable. The statute gives the remedy by motion against both ; and we are not able to discovei any reason for their exemption from the summary process allowed against their principal. They can have no right to complain of the *456 remedy. They were fully aware, when they bound themselves in the bond with him, of ail the consequences which followed. By voluntarily making themselves parties with the sheriff in all proceedings against him as sheriff, they submitted themselves to the jurisdiction of the court as it then existed by law, and virtually relinquished all claim to the ordinary remedy. They undertook that he should faithfully discharge all his duties, and to be responsible for his delinquency, and they did so according to the law as it then stood; and that law is to be considered a part of the contract, and this as well in fixing the liability of the sheriff as in the method of doing so. And they are as much bound to submit to the remedy as to the liability. If the remedy is binding on him, it is equally so on them. It is on this principle that an award of arbitrators is binding when voluntarily solicited. That a sale of property under a mortgage is a valid transfer. Hence the courts render judgment on motion against all the obli-gors in a forthcoming bond. And it is upon the same principle that this court and other appellate tribunals render final judgment against the sureties in appeal or writ of error bonds. In support of these propositions we refer to the repeated decisions of the courts in Virginia, Kentucky, Tennessee and Alabama, and also to the opinion of the Supreme Court of the United States in the case of the Bank of Columbia v. Oakley, 4 Wheat. 235. See 1 Rand. 2. 1 Wash. Rep. 356. 2 Munf. 266. 2 Yerger, 265. Peck’s Rep. 419. 1 Ala. Rep. 22, 426. 1 Stewart, 63. 2 do. 226. 1 Porter, 432.
It is true, that in many of the cases which have come under our notice, the courts have directed an issue to the jury when the party has demanded it. But the law has not been deemed unconstitutional which simply empowered the court to pronounce the judgment. In the case of forthcoming bonds the courts in Virginia take upon themselves to decide the issue of non est factum, even when the defendant demands a jury. They hold him bound, by the consent implied from the execution of the bond, to submit to the decision of the court. There is much stronger reason for this in motions against the sheriff for official delinquency. And yet, 1 believe, the courts have seldom refused the sheriff or his sureties a jury trial when it has been formally *457 demanded. In this case, neither the sheriff’ nor his sureties asked the court for a jury, or claimed that method of trial. They, therefore, have still less cause for complaint. They appeared in obedience to the notice of the motion, which contains a very accurate and methodical statement of the' grounds of complaint, and contested the right of the plaintiff to recover; and thus voluntarily submitted to the jurisdiction of 'the court. "VYhat right have they now to complain that they were deprived of the right of jury trial ?. In the language of the court in the case of Logwood v. The Huntsville Bank, Ala. Rep. 23, we may say, “That which they had the opportunity .and power to ask, and have not asked, cannot be said to have boen denied.”
It has, however, been very forcibly urged in the argument that in no case can the right of trial by jury be waived, expressly or impliedly. We cannot consent to this interpretation of the bill of rights. The right it secures to the citizen is one which is justly regarded as one of the strongest bulwarks of human rights, and is held dear by the people of this'country. Still it must be considered a privilege which he may waive in any case he may choose. To hold otherwise, would be to restrain the liberty and privileges of the citizen, and not to enlarge them. Carried to this .extent, the argument would deprive the suitor of the power of selecting his forum, in cases where the law gives him an election, if in one the proceeding was without jury.
The bill of rights says, that the right of trial by jury shall remain inviolate. It was not designed by this, to force a jury trial upon the party whether he wished it or not. It is then not the trial, but the right of trial by jury which is rendered inviolate. It is, therefore, as the court say in the case of The Bank v. Oakley, 4 Wheat. 335, a right pro se introducta. And if so, he may assuredly waive it. This reasoning is directly sanctioned by the court in the case of The Bank v. Oakley just noticed. That was a case where an execution was issued by the clerk, not upon any judgment, but upon the simple deposit of a note, which was payable and negotiable at the bank, and which not being paid at maturity, the money due upon it was demanded of the debtor, and not being paid within the ten days afterwards, as required by the charter of the bank, was sent to the clerk with instructions to issue *458 the execution. This was in pursuance of the law of Maryland incorporating the bank. The defendant moved to quash the process, on the ground that the law was a violation of the constitution of that state. But the court refused the motion, on the grounds in substance which have been before detailed. By making the note payable to the bank he had consented to the jurisdiction, and as he also had the right to ask a jury, he would not be considered as deprived of it, until it had been denied him. Hence we think it clear in every aspect of this case, that the defendants cannot object to the judgment on this ground.
It was also urged in the argument, that the motion and notice do neither of them contain any good cause of action against the sureties. That the bond is not,set out or described, and no breaches are assigned. The motion states with great precision the gravamen of the complaint. Recites the judgment, the amount, when rendered, in what court, &c. When execution issued, when it came to the sheriff's hands, and the return, which shows that voluntarily and without authority he omitted to levy it, and that though often demanded of him he had not paid the amount of it, and claims the same, with the statutory damages. It describes the sureties as such on the official bond of the sheriff. This we think was a sufficient statement of the ground, of complaint, and of the breaches. The omission to levy the execution was certainly a breach of the condition of the bond, and the failure to pay the money due on the execution was another. This is as much as the courts ever require in such cases. This is as full and concise a statement of the grounds of the motion, as that in the case of Jameson v. Harper, 1 Porter, 1 Ala. Rep. 432. There the court held that if the surety wished to deny his liability as surety, he must crave oyer of the bond and plead non est factum. And in so holding, the court only recognized the principle uniformly sanctioned by all the courts in similar cases. See 1 Porter, 22. 1 Stewart, 63. 1 Rand. 2. It is a matter of evidence at any rate, and after an appearance and trial it is too late for the defendants to turn the plaintiff round on an objection to the sufficiency of the pleadings. In these cases the pleadings are mostly carried on ore tenus at the bar; and therefore the general rules of special pleading cannot apply. It is a summary proceeding for the ends of *459 justice, and if it appears from the record that the defendants had due notice, or voluntarily appeared and contested the grounds of recovery, the courts will not listen to objections against the mere structure of the motion.
It was insisted that there was no service of process in this case to bring the defendants into court, nor any evidence of a voluntary appearance. It is deemed a sufficient answer to this objection, that no process is required by the statute. The notice is in the nature of process, and when duly served according to the statute answers necessarily, all the purposes of a summons or a capias. The distinctions which exist by the rules of the common law between a capias and summons are virtually abolished by our practice. For our common capias only authorizes an arrest under the proper affidavit to hold to bail. It was certainly competent for the legislature to modify the rules of the common law, and to adopt what form of notice was deemed proper. It is true that this notice is not process of court, but the mere act of the party, and yet I apprehend the effect of service must be the same. The defendant then has his day in court, or may have it. The notice was served by the sheriff, and this though it is not a part of his official duty, may yet be perfectly satisfactory, if it appears to the satisfaction of the court that the notice has been communicated. The record states an appearance of ail the parties. This was good without notice, and is surely so, where the notice is served by an officer of the court. An entry of an appearance by the clerk, on the docket, as by stating the name of the attorney on the same, "has been held good. See Peck’s Rep. 422.
The judgment must be affirmed.